## Georgia State Building and Loan Association v. Everard M. Grant et ux.

1. **Usury.** *Contract to waive. Public policy.*

    A contract by a borrower to waive, directly or indirectly, the usury laws is against public policy and void.

2. **Building and Loan Association.** *Contract stipulation. Final settlement. Rate of interest.*

    Where a borrowing member of a builidng and loan association pledged his stock in the association and mortgaged other property as security for the loan, and the contract stipulated that "On the maturity of the stock so advanced upon, total payments of installments, interest and premiums shall not exceed the amount of the advance, with interest thereon at the highest contractural rate per annum allowed by the statutes of the state," the borrower is entitled to the benefit of the stipulation only on maturity of the stock.

3. **Same.**

    A provision in the by-law of a building association that, "where its loan contracts are governed by laws that limit the aggregate amount of premium and interest that can be taken on them, only so much of the premium collected shall be taken as profits by it as will, with the interest collected, equal and conform to the highest contractural rate of interest in such state, the balance of the premium being used at settlement" in reduction of the debt, gives the borrower the benefit thereof only on final settlement, after maturity of the stock.

4. **Same.** *Stockholders' payments. Withdrawal fees.*

    A complainant who seeks by suit to have the contract by which he, as a stockholder, borrowed money of a building and loan association declared usurious, is not entitled to have credited on the principal of his loan the sums paid by him in his character of stockholder on expense account or for fines and withdrawal fees.

FROM the chancery court of, first district, Hinds county.

HON. HENRY C. CONN, Chancellor.

Grant and wife, appellees and cross-appellants, were complainants in the court below; the building and loan association, appellant and cross-appellee, was defendant there.

Grant and his wife, in March, 1896, took ten shares of stock in the Georgia State Building & Loan Association. In April, 1896, they borrowed $400 of said association, and to secure this loan they assigned to the association the ten shares of stock, and gave a deed of trust on lands in Hinds county, Miss., where they lived. The stock contract is evidenced by a certificate, which is distinct from the loan contract. In December, 1896, Mrs. Terry and her husband, who owned ten shares of stock in the said association, borrowed of it $600, and to secure this loan they assigned their stock to the association, and gave a deed of trust on lands in Hinds county, Miss. After the making of these contracts, Mr. and Mrs. Terry sold their property on which this deed of trust had been given and their stock to Mrs. Grant, upon the consideration of a certain amount of cash paid and the assumption by Mrs. Grant of the debt to the association. The contracts in both cases provided for the payment of six per centum interest and six per centum fixed premium on amount advanced. According to the contracts, these loans were payable in Savannah, Ga., but according to the by-laws of the association all payments may be made to local agents at the option of the borrower. There is also a provision in the by-laws that the local agent is to be the agent of the borrower, and not of the association. All payments of these loans were in fact made to the local agents of the association at Jackson, Miss. The contracts for the loans were made at Jackson, and the mortgages were on lands in Hinds county. There is a stipulation in the Terry contract, which is set out in the opinion of the court, by which the association agreed that, when the loans were paid up with six per centum interest and the premium,

the interest should not exceed the highest rate of interest allowed by the law of the state where the contract was made or the sum advanced. After this contract was made, the association adopted an amendment to its by-laws providing that, where the contract of the loans of the association are governed by the laws of the state that limits the interest that may be charged as interest and premium, only so much of premium will be taken as profits as will, with interest collected, conform to the highest rate of interest allowed in such states on the sum advanced.

Grant and his wife filed the bill in this case, seeking to cancel the bonds and notes in the two loans, and to satisfy the liens of the trust deeds given to secure the loans, upon the grounds that both contracts were usurious, illegal, and void; the charge in the bill being that the payments made, in the way of dues on stock, interest, and premium, on the principal of the debts overpaid them, and left a balance due complainants. Answers were filed denying the charge of usury, and insisting that the contracts are solvable in the state of Georgia, and denying that they are usurious even under the laws of Mississippi. On the final hearing the chancellor held that the contracts were to be governed by the laws of the state of Mississippi; that they were usurious; that all partial payments made by way of interest and premium should be credited on the principal of said debts; that the amount paid on the expense account and charges for fines and withdrawal fees should not be credited on the principal of the debts; and referred the case to a commissioner to state the account on this basis. The commissioner made his report, to which both complainants and defendant excepted. The court overruled the exceptions, and rendered a decree fixing the amounts due in each case, and ordered the lands sold to pay it. From this decree defendants appealed to the supreme court, and complainants prosecuted a cross-appeal.

*Williamson, Wells & Croom,* for appellant and cross-appellee:

The two contracts involved in this suit are not usurious, whether controlled by the laws of Mississippi or Georgia. The statute of Georgia and the decisions of the supreme court of that state, construing the statute with reference to the contracts of the appellee association, uphold the legality of these contracts. *R.* v. *G. S. B. & L. A.,* 102 Ga., 126; Laws Ga., 1890-91, p. 176; *Cook* v. *B. & L. Ass'n,* 104 Ga., 814.

But treating them as Mississippi contracts made between a nonresident building and loan association and citizens of this state and solvable under the laws of Mississippi, they are not usurious. While the rate of interest is fixed by the by-laws at six per centum per annum, and the premium at fifty cents per share of the stock loaned on, so written in the contracts, yet it is stipulated by the contracts and in the by-laws made a part of the contracts, that upon the maturity of the contract total payments of installments, interest and premiums shall not exceed the amount of the advance with interest thereon at the highest contractual rate per annum by the statute of the state. These contracts were made and the by-laws existed with these provisions in them, before the decision in the *Sokoloski* and *Shannon Cases,* holding that fixed premiums and interest exceeding ten per centum are usurious, and before there was any agitation in the courts of these questions of usury as to building and loan association contracts. This provision in the contract and by-laws of the association refutes the charges in the bill that the contracts were fraudulent and made to avoid the usury laws of Mississippi. There is no proof to sustain the charge in the bill, and the court will not presume a state of facts that makes the contract usurious, but on the contrary, will presume that the contract was made in good faith and is legal, if on any view it can be construed to be legal. *Brown* v. *Freeland,* 5 Ga., 181; *Wilkins* v. *Riley,* 47 Miss., 306.

In the case of *Godman* v. *B. & L. Ass'n,* 71 Miss., 310, this

court holds that a member may bind himself to a building and loan association contract, and will be held to its performance.

In the case of *Loan Ass'n* v. *McElroy,* 72 Miss., 434, a borrowing stockholder, who has paid legal interest on his loan, may compel application of interest and premium, so paid, as legal dues and interest, and pay him the balance, but without withdrawing and ceasing to be a member, he cannot have a cancellation of his loan contract, but continues liable for dues and legal interest and for fines properly assessed against his stock.

Appellees never ceased to be members, did not withdraw from the association, but filed this bill to cancel their contracts. The very contracts in this case stipulated how all excess of interest and premium paid shall be applied, viz.: to the principal. In the contracts presented to this court, in *Sokoloski, Shannon,* and other cases, decided by this court, no such stipulations were in the contracts, the *Shannon Case* being a contract in appellant association, was made just after the association came into this state and was made without stipulations in the contract or in the by-laws. The record in that case presented a very different state of facts from the instant case. In the *Shannon Case,* the fact that it was a Georgia contract was relied on. The court held simply that the mere stipulation in the contract and by-laws that it should be a Georgia contract did not make it so, when all the facts showed the intention of the parties that it should be a Mississippi contract. The intention of the contracting parties in the two contracts now before the court was unquestionably that the interest and premium should not exceed the legal rate of interest either in Georgia or Mississippi. The intention was to comply with the law, and to make a legal contract.

The association could not, under these contracts, legally insist upon more than ten per cent of interest and premium upon the advance or loan, and the borrower did not agree to pay a greater rate than ten per cent. Surely such a contract will not be held

usurious and void, where neither party intended to receive or pay usury, and none was stipulated for.

The proof in this case shows that the appellant is strictly a building and loan association dealing only with its members for their benefit, and that it is a successful association, maturing its stock regularly. The longest period of stock has run before maturity being 108 months, many having been matured in a shorter time.

Taking this period as a basis, appellees would have paid on the Grant loan $1,080.00, to mature the stock of ten shares, when the loan would have been paid and Mrs. Grant would have received upon her six investment shares, $600.00 in cash, the maturity of the four shares being applied to the settlement of the $400.00 loan.

The actual cost to Mrs. Grant for her loan would be $80.00.

A calculation as to the Terry loan demonstrates a like happy result. The maturity of her ten shares would have yielded her $400.00 in cash and the payment of the $600.00 loan.

In construing these contracts the court cannot in justice ignore the fact that the stock contract and the loan contract are separate and distinct, and the payment of dues on the shares not borrowed on, was in no sense a payment of the loans, and to mature this stock the borrower was receiving back her full share of the premium and interest paid, not only by herself, but also by all other members.

If our contention is correct, and these contracts are not usurious, then the decree of the chancellor was wrong in directing the commissioner to credit all payments of interest and premium on the principal in addition to the withdrawal value of the stock and the decree confirming the report of the commissioner was erroneous for that reason, and both of the decrees are wrong, for the further reason that they did not require

complainants to be charged with the fines for nonpayment of dues.

It will not do to say that the amendment of the by-laws in 1899 made subsequent to these contracts did not apply to them, but to subsequent contracts only; because both of these contracts provide that the by-laws then in force and all future amendments should be a part of the contracts the same as if written therein.

*Frank Johnston* and *Stirling & Harris,* for appellees and cross-appellants.

The proposition that these contracts are governed by the laws of this state, and not by the laws of Georgia, is settled by the recent decisions of the supreme court, in the case of *Shannon* v. *Georgia State Building & Loan Association,* 78 Miss., 955.

We submit, that the amendment to the by-laws adopted after the contract with Mrs. Grant was made, cannot have the effect of validating the agreement in respect to the payment of usurious interest.

When this contract was made, in its inception, it was an illegal contract, under the laws of this state. It was entered into in violation of the laws of this state, and a legal obligation cannot for the first time be imposed upon the debtor by a subsequently adopted by-law of the association.

Mrs. Grant was not only under no legal obligation under the contract to pay any interest, but she had an absolute vested, legal right under the statute, to sue the association, and recover any and all interest that she paid.

The authorities concur in the view that all by-laws must be reasonable "and legal," and further, it must follow that a by-law cannot possibly have a retroactive effect as to existing contracts, which undertook to deprive the other party to the contract of any vested legal right that he had under the contract.

*Holyoke B. & L. Ass'n* v. *Lewis,* 1 Col. App., 127, 4 Am. & Eng. Enc. Law (2d ed.), 1020.

The refunding of the excess of the ten per centum interest, under the by-laws, depends upon the ability of the association to earn dividends. If it failed to earn dividends to an amount that would enable it to refund the excess, then the stipulation becomes ineffectual and of no value.

The contract has been treated, throughout, and is now being treated by the association as one calling for the interest as stipulated for by its terms, and not as one coming within the operation of the by-laws. Neither the special stipulation in the Terry contract, nor the subsequently adopted by-laws can have the effect of validating that contract. It applies only to a settlement on the maturity stock, and not on a withdrawal settlement.

The chancellor should have allowed as a credit on the debts, the $1.00 per month which was applied by the building and loan association to the expense account.

The obligation to contribute to the expenses of the association rests solely, and exclusively, upon the fact that the stockholder is a member of the association, and, as such, is participating in the profits and receiving dividends on his stock.

When all right to profits and dividends is waived, then it would be inequitable, and unjust, to require the withdrawing stockholder to contribute to the expenses of the association without any consideration whatever.

The fines should not have been charged against the complainants. They were charged by the association after the complainants had notified the association that the contracts were usurious, and that they would make no more payments.

The "consideration" fee of $20.00 charged in the Grant contract is only a device to charge usurious interest, as the complainants had paid the attorney of the association $15.00 for an examination and abstract of their title.

Argued orally by *C. M. Williams,* for appellant, and by *J. B. Sterling* and *Frank Johnston,* for appellees.

WHITFIELD, C. J., delivered the opinion of the court.

The only proposition seriously pressed upon us by appellant is that the provision in the bond in the Terry case and the provision in the by-law in the Grant case, properly construed, each means that whenever a stockholder, in the exercise of his legal right under the contract to withdraw, attempts to withdraw, he is entitled *then,* however long prior to the maturity of the stock on final settlement, to have the account so taken as that he shall only pay, by way of interest, the highest legal rate allowed by the law of the state where it is sought to be enforced.   The section in the bond is as follows: "It is further stipulated and agreed that, upon the maturity of the stock so advanced upon, total payments of installments, interest and premium, shall not exceed the amount of the advance with interest thereon at the highest contractual rate per annum allowed by the statute of the state aforesaid."   It is too plain for argument that this means that the stockholders shall have the benefit of such provision only upon the maturity of the stock advanced upon.   There is no room for construction; the meaning is plain.

The by-law referred to is as follows — being section 12 of article 6 of the by-laws, incorporated May 24, 1891: "The board of directors, in their discretion, shall have power and authority to make such contracts with stockholders, both with regard to stock subscriptions and withdrawal privileges and advances and loans, as shall seem to them to the best interest of the association, provided that wherever the loan contracts of this association are governed by laws that limit the aggregate amount of premium and interest that can be taken on them, only so much of the premium collected shall be taken as profits by the association, as will, with the interest collected, equal and conform to the highest contractual rate of interest in such state,

the balance of the premium being used, *at settlement*, in reduction of the debt." The words "at settlement," in this by-law, mean the same thing as the words, "upon the maturity of the stock advanced upon," in the bond given by Terry. We think there is no room for construction as to them, and that they plainly mean that the only case in which the stockholders would be entitled to the benefit of the stipulation in the bond in the one case, or the provision of the by-law in the other, would be upon final settlement, when the stock had been carried to maturity. This would be in accordance with the usual building and loan scheme, which does not contemplate, usually, anything other than carrying the stock to maturity, and thus completing the contract.

But, apart from this, it is perfectly plain from the testimony of E. W. Bell, secretary of the association, that the construction which we put upon the by-law and stipulation in the bond is just the construction intended by the association. He says: "Just here I will explain that in the books there will appear in red ink, at the end of each fiscal year, the amount of dividend apportioned to the stock. This will be shown on the transcript, but it *must be understood* that this is only a *tentative credit,* and goes to the stock *only in case it is carried to* maturity. If stock is withdrawn before maturity, it *does not receive* this dividend as a credit, but its withdrawal value is ascertained by loan fund payments with interest for the average time at six per cent." Again, he says: "To illustrate: If Mrs. Grant was in good standing with her stock, and had paid all arrearages of interest and premium, and wanted to buy out, without using the stock, she would have to pay $400, the amount of the advance; or, if she wanted to use the stock at its withdrawal value, as part payment, she could do so; but she would not be entitled to receive any part of her interest and premium payments *in reduction of the debt,* as the interest allowed upon the loan fund payments of the stock would be in lieu of her rights to partici-

pate in the earnings of the association.   *This right she surren-
ders when she elects to withdraw."*

This shows that the association meant precisely what it has
said, and what they have said is too plain for dispute.   But,
further than this, these two contracts have been dealt with from
the first by the association· upon the basis of only allowing the
benefit of the by-laws and the stipulation in the bond on final
settlement, when the stock has been carried to maturity.   The
association was proceeding all along upon the construction of
Mr. Bell, which is correct.   We have, therefore, not only the
plain provision of the by-laws and the stipulation in the bond,
but also the construction placed upon it by the secretary of the
association, who, presumably, is daily making hundreds of set-
tlements on this construction.   But we have added to this the
fact that this construction has been put into practical operation
in both contracts under review.   The counsel for appellants, it
is true, argued at the bar that Mr. Bell's construction might
be wrong.   And so it might, and we are not founding our opin-
ion upon Mr. Bell's construction, but simply refer to the fact
that he has so construed these provisions of the bond and by-law
as very persuasive of the *intention* of the association in the
matter.   Counsel further argued that these provisions were in
exact harmony with a provision, which the supreme court of
North Carolina, in the *Meroney Case,* 116 N. C., 912, 21 S. C.,
934, 47 Am. St. Rep., 841, said would save the contract from
the taint of usury.   That opinion on this subject is as follows:
"It may not be improper for us to say, in this connection, that
the insertion in such a contract as we now have under considera-
tion of a stipulation that *in no event* should the aggregate of
all the sums to be paid· by the borrower (*interest being allowed
to his credit*) exceed the sum loaned him and interest thereon at
eight per centum per annum would perhaps entirely relieve all
such transactions from the imputation of being usurious.   The
remedy seems easy.   It is insisted with great confidence that

the rate of interest which he would be required to pay if he and his fellow borrowers would carry out their engagements will be much less than six per centum.    If that be true, no loss can come to the lender by reason of the incorporation of such a stipulation in the contract.    It would be merely to make *that* a part of the contract which is in fact an inducement to it, but an inducement put in such shape as to be of no legal effect to protect the borrower from usurious exactions.    The proposition is a simple one.    Let the money-lending corporations that, under the guise of building and loan associations, are professing to loan money, in a complicated and somewhat confusing method, at six per centum or less, insert in their contract a binding stipulation to the effect that *in no event* will they exact more than eight per cent, and all trouble and difficulty will vanish."

It must be obvious, upon the mere reading of this utterance, that it is vitally different from the stipulation in this bond and by-law.    What the supreme court of North Carolina said was that, if the benefit of this sort of provision, *in any event,* was allowed the borrower, then it would save the contract from the taint of usury; that is, on withdrawal as well as at maturity of the stock.

On the whole, we think the learned chancellor was entirely correct in the conclusion reached, both on appeal and cross-appeal in both cases.

There is nothing in the cross-appeal.    The chancellor correctly disallowed the credits claimed therein.    This results from the dual nature of the building and loan contract in a true building and loan association, as this is.    *People's B. & L. Ass'n* v. *Hawks,* 81 Miss., 61; s. c., 32 South., 1001.

We only add that the by-law in the Grant case would not become a part of the contract here, for the reason that Mrs. Grant had the *legal* right, *before it was adopted,* to sue for and recover the usury.    This right was a right *vested by law,* not by the contract; and it was not competent for the association,

or the association with Grant jointly, to *change* or *alter* the *usury law of the state* by any by-law of its own, or to impair rights vested in Mrs. Grant by virtue of that usury law of the state and our decisions construing it, and holding Mrs. Grant entitled to recover the interest in an action at law, or have it allowed in equity. The provision that she would be bound by all by-laws then in force or thereafter to be adopted would bind her as far as a *contract could.* But she could make no contract to waive the usury laws of the state, nor could any by-laws adopted after her contract was made have any such effect. Public policy forbade both. Appellant must see the clear distinction. Appellant says the effect was to bring the contract within the law, not to evade it. Granted; but before the by-law was adopted Mrs. Grant's legal right, law-conferred, to recover all the interest, the usury having already tainted the contract, had attached, was a valid right, and could not be *contracted away,* such a contract being forbidden to be made by law.

*Affirmed on appeal and cross-appeal.*